UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL SHARP, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:18-cv-00502-JPH-MJD |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Respondent. ) | |

**ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS**

Michael Sharp was convicted in an Indiana state court of one count of Class A felony child molesting (deviate sexual conduct) and one count of Class C felony child molesting (fondling). In this case, Mr. Sharp seeks a writ of habeas corpus under 28 U.S.C. § 2254. He argues that the application of Indiana's Credit Restricted Felon ("CRF") statute to him at sentencing violated the Constitution's ex post facto clause, and that trial and appellate counsel were ineffective when they failed properly raise that argument in state court. For the reasons that follow, Mr. Sharp's application is **GRANTED IN PART**.

**I.
Background**

Federal habeas review of a state conviction requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C.

1

§ 2254(e)(1). On post-conviction appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history:

> C.S. was born in 1996. Between August 2007 and August 2008, when C.S. was ten and eleven years old, he lived with his father and stepmother, but would spend every other weekend with his mother and Sharp, his stepfather. During those every-other-weekend visits, Sharp would come into C.S.'s bedroom at night and both fondle and "suck[]" C.S.'s penis. *Trial Transcript* at 77. C.S. would tell Sharp to stop and Sharp would then return to his room. Sharp, however, continued to molest C.S. every other weekend when C.S. was visiting. Sharp told C.S. it was a "secret" and that he (Sharp) would "go to jail" if C.S. told anyone about it. *Id.* at 78. In October 2008, C.S. disclosed Sharp's molestations to his stepmother.
>
> On October 17, 2008, the State charged Sharp with one count of Class A felony child molesting (deviate sexual conduct) and one count of Class C felony child molesting (fondling), both of which alleged that the molestations occurred "on or between August 1, 2007 and August 31, 2008." *Direct Appeal Appendix* at 95. At the conclusion of a two-day jury trial, the jury found Sharp guilty as charged. The trial court held a sentencing hearing on October 4, 2010. At the sentencing hearing, the prosecutor, in discussing aggravating factors, stated that pursuant to Ind. Code § 35–50–2–2(i) (2008), the minimum executed sentence for Sharp's Class A felony was thirty years rather than twenty. Defense counsel likewise erroneously indicated that the court's sentencing discretion was limited by statute to a range of thirty to fifty years for Sharp's Class A felony conviction.
>
> The trial court then identified aggravating and mitigating circumstances and determined that the aggravators "substantially outweigh[ed]" the mitigators. *Direct Appeal Appendix* at 147. The trial court sentenced Sharp to forty years executed on the Class A felony, a sentence the trial court deemed "most appropriate under the circumstances," and a concurrent six-year sentence on the Class C felony. *Trial Transcript* at 217.
>
> The trial court also found Sharp to be a credit restricted felon (CRF). *See* Ind. Code § 35–41–1–5.5 (2008). In its written sentencing order, the trial court recognized that the time period of the offenses overlapped the July 1, 2008[,] effective date of the CRF statute and this court had held that it is an ex post facto violation to apply that statute to crimes occurring prior thereto. *See Upton v. State*, 904

N.E.2d 700, 706 (Ind. Ct. App. 2009), *trans. denied*. The court found, however, that the evidence established that Sharp had committed acts of criminal deviate conduct both before and after July 1, 2008. The trial court therefore concluded that because Sharp had committed acts of deviate sexual conduct after July 1, 2008, it was not an ex post facto violation to apply the CRF statute to him.

Sharp appealed his convictions and sentence to this court. In the context of his inappropriate sentence challenge, appellate counsel argued that Sharp's designation as a CRF should be considered in our review in that it rendered his aggregate sentence inappropriately long. This court rejected Sharp's argument. *See Sharp v. State*, 951 N.E.2d 282 (Ind. Ct. App. 2011), *trans. granted*.

Sharp sought transfer on the issue of whether his CRF status was relevant to review of the appropriateness of his sentence. The Supreme Court granted transfer and [, on June 26, 2012,] held that "appellate sentence review may take into consideration the potential consequences of an offender's status as a credit restricted felon," but nevertheless concluded that Sharp's sentence was appropriate even taking his CRF status into account. *Sharp v. State*, 970 N.E.2d 647, 651 (Ind. 2012). In a footnote, the Supreme Court noted that during oral argument, Sharp raised an ex post facto challenge to his status as a CRF, arguing that "because the jury did not make a specific finding that any of the acts of molestation occurred after the effective date of the credit restricted felon statute, there was insufficient evidence to support his designation as a credit restricted felon." *Id.* at 648 n.1. The Supreme Court rejected this argument finding that there was "sufficient evidence from which a reasonable jury could conclude that [Sharp] molested C.S. after July 1, 2008, the effective date of the statute." *Id.*

Sharp filed a petition for post-conviction relief on March 28, 2013, and an amended petition on October 28, 2016. In his petition, Sharp raised two claims of ineffective assistance of trial counsel and two claims of ineffective assistance of appellate counsel. The ineffectiveness claims concern the misstatement regarding the minimum sentence available for a Class A felony and whether the trial court's designation of Sharp as a CRF violates ex post facto principles. The post-conviction court held a hearing on November 30, 2016. On January 27, 2017, the post-conviction court entered findings of fact and conclusions of law denying Sharp's request for post-conviction relief.

3

*Sharp v. State*, 94 N.E.3d 362, *1-2 (Ind. Ct. App. 2017) (footnotes omitted) (*Sharp III*).

In that post-conviction appeal, Mr. Sharp argued that trial and appellate counsel were ineffective—first at sentencing and then on direct appeal—for failing to challenge the application of the CRF statute to him at sentencing. Dkt. 8-11. The Indiana Court of Appeals affirmed as to these ineffective-assistance issues. *Sharp III*, 94 N.E.3d at *5.[1] For trial counsel, the court reasoned that Mr. Sharp was not prejudiced because the sentencing court addressed the ex post facto issue on its own. *Id.* at *4. For appellate counsel, the court reasoned that Mr. Sharp was not prejudiced because the argument was "simply . . . a restatement of the sufficiency of the evidence argument addressed by the [Indiana] Supreme Court and decided against him." *Id.* The Indiana Supreme Court denied Mr. Sharp's petition to transfer. Dkt. 8-10; dkt. 8-15.

In this case, Mr. Sharp contends that the application of the CRF statute to him at sentencing violated the Constitution's ex post facto clause. Dkt. 19 at 2–5. The State charged Mr. Sharp with child molestation, alleging that the acts of molestation occurred "on or between August 1, 2007 and August 31, 2008." *Sharp III*, 94 N.E.3d at *1. The general verdict finding Mr. Sharp guilty did not specify which act or acts or corresponding date or dates were the basis for the conviction. *See id.* at *4. Because the CRF statute went into effect on

---

[1] The court granted partial relief on Mr. Sharp's claim that trial counsel was ineffective for misstating the minimum sentence for a Class A felony. *Sharp III*, 94 N.E.3d at *4–5.

July 1, 2008 and the charge against him covered the timeframe both before and after that date, Mr. Sharp contends that applying the CRF statute to him violated the Constitution's ex post facto clause, and that trial and appellate counsel were ineffective when they failed to properly raise that argument. Dkt. 19.

## II.
## Applicable Law

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief to "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). AEDPA's standards "were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc). Therefore, a federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Dassey*, 877 F.3d at 301–02.

"For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks

merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* In other words, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 103. "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc).

Under § 2254(d), the Court looks to "the last reasoned state-court decision to decide the merits of the case," *Dassey*, 877 F.3d at 302, and analyzes whether that decision "'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact," *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018). The Court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision." *Id.* In short, the Court "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

### III.
### Discussion

#### A. Standalone Ex Post Facto Claim

Mr. Sharp argues that—independently of any ineffective assistance of counsel—the application of the CRF statute to him at sentencing violates the

6

Constitution's ex post facto clause.  Dkt. 19 at 2.  The State did not respond to this claim.  *See* dkt. 21.

AEDPA requires petitioners to exhaust "the remedies available in the courts of the State" before a federal habeas court can grant relief.  *King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016) (quoting 28 U.S.C. § 2254(b)(1)(A)).  Proper exhaustion requires that claims be raised "at each and every level in the state court system."  *Id.*  "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."  *Id.*

Here, Mr. Sharp admits that he did not raise the ex post facto claim on direct appeal from his sentence—in fact, that is the basis for his claim of ineffective assistance of appellate counsel.  Dkt. 19 at 6 ("Appellate Counsel failed to object to Mr. Sharp's credit restricted felon designation on ex post facto grounds.").  His ex post facto argument is therefore procedurally defaulted as a standalone claim.  *See King*, 834 F.3d at 815.

### B. Ineffective Assistance of Trial Counsel at Sentencing

Mr. Sharp argues that his trial counsel was ineffective for failing to object at sentencing when the trial court applied the CRF statute to him.  Dkt. 19 at 6.  The State responds that in *Sharp III*, the Indiana Court of Appeals reasonably concluded that trial counsel was not ineffective because Mr. Sharp could not show prejudice.  Dkt. 21 at 4, 8.

Criminal defendants have a Sixth Amendment right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

A habeas petitioner must make two showings to succeed on an ineffective assistance claim: (1) that counsel rendered deficient performance (2) that prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673-74 (7th Cir. 2018). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The Indiana Court of Appeals in *Sharp III* recognized that the sentencing court applied the CRF statute to him at sentencing even though "the time period of the offenses overlapped the July 1, 2008 effective date of the CRF statute." 94 N.E.3d at *1. And it recognized that "application of the CRF statute to crimes occurring prior to its effective date has been held to constitute a violation of the ex post facto clause of the United States Constitution." *Id.* at *4 (citing *Upton v. State*, 904 N.E.2d 700. 704–06 (Ind. Ct. App. 2009)). The Court of Appeals held, however, that Mr. Sharp could not establish prejudice because the sentencing court "addressed the issue sua sponte and concluded that there was no ex post facto violation." *Id.*

To prevail, Mr. Sharp must show that *Sharp III*'s adjudication of this issue "(1) resulted in a decision that was contrary to, or involved an unreasonable application or, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

8

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Dassey*, 877 F.3d at 301–02. However, Mr. Sharp cites no Supreme Court case applying *Strickland*'s prejudice prong. *See* dkt. 19; dkt. 22. And the Indiana Court of Appeals "correctly identifie[d] *Strickland* as the controlling legal authority and, applying that framework, reject[ed Mr. Sharp's] claim." *Williams v. Taylor*, 529 U.S. 362, 406 (2000); *see Sharp III*, N.E.3d at *2, 4 (explaining *Strickland*'s prejudice test and finding no prejudice). That application was therefore not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406.

Similarly, Mr. Sharp does not identify any "unreasonable" factual findings that the Indiana Court of Appeals relied on. *See* dkt. 19; dkt. 22. *Sharp III* recognized that the sentencing court raised the ex post facto issue on its own, identified the relevant authority, analyzed the issue, and concluded that there was no ex post facto violation. 94 N.E.3d at *1–2. Mr. Sharp does not dispute that the sentencing court did those things in deciding that there was no ex post facto violation. *See* dkt. 19; dkt. 22.

In short, Mr. Sharp has not shown any unreasonableness in *Sharp III*'s conclusion that he was not prejudiced when trial counsel did not object to the application of the CRF statute on ex post facto grounds. Given the sentencing court's express analysis of the ex post facto issue—and without contrary authority from the Supreme Court—it was not unreasonable for the Indiana Court of Appeals to conclude that the sentencing court would have reached the same conclusion even if trial counsel had objected. *See id.* at *4. And without

9

"a reasonable probability" that the result would have been different, there is no prejudice at the trial-court level. *Strickland*, 466 U.S. at 700.

### C. Ineffective Assistance of Appellate Counsel

#### 1. Standard of Review

As explained above, the Court ordinarily looks to "the last reasoned state-court decision to decide the merits of the case," *Dassey*, 877 F.3d at 302, and analyzes whether that decision "'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact," *Wilson*, 138 S. Ct. at 1191–92. But that standard "only applies" if the claim "was adjudicated on the merits in State court proceedings." *Sutherland v. Gaetz*, 581 F.3d 614, 616 (7th Cir. 2009).

Here, the Indiana Court of Appeals in *Sharp III* found that Mr. Sharp's ineffective assistance of appellate counsel argument was "simply a restatement of the sufficiency of the evidence argument" that had been addressed on direct appeal. 94 N.E.3d at *4. The Court of Appeals therefore held that Mr. Sharp could not establish prejudice on the claim because it was barred by res judicata. *Id.* The post-conviction trial court had done the same thing, finding no ineffective assistance for failing to raise the ex post facto claim on direct appeal because "the Supreme Court rejected this claim because there was evidence of molestation after the effective date of the CRF statute." Dkt. 9-2 at 66.

"[A] judgment of res judicata is not an adjudication on the merits," and § 2254(d)'s standard applies only to claims that state courts adjudicated on the

merits.  *Sutherland*, 581 F.3d at 616.[2]  The Court therefore cannot evaluate the reasonableness of the decisions from Indiana's post-conviction courts, *see id.*, and instead reviews the issue de novo, *Ruhl v. Hardy*, 743 F.3d 1083, 1091 (7th Cir. 2014) ("If no state court has squarely addressed the merits of a habeas claim, we review the claim *de novo* . . . but still with deference to the state court.").

### 2. The *Strickland* Test

Ineffective assistance of counsel claims are analyzed "under the familiar two-prong test of *Strickland v. Washington*":

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that a conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* (quoting *Strickland*, 466 U.S. at 687).  Here, Mr. Sharp argues that his appellate counsel was ineffective for failing to raise an ex post facto issue on direct appeal from his sentence.  Dkt. 19 at 6.

---

[2] If the state court provides no reasoning, the federal habeas court presumes that the ruling was on the merits and the petitioner must show that "there was no reasonable basis for the state court to deny relief."  *Harrington v. Richter*, 562 U.S. 86, 98–100 (2011).  Here, however, the Indiana Court of Appeals explicitly relied on res judicata instead of addressing the merits.  *Sharp III*, 94 N.E.3d at *4.

11

### a. Deficient Performance

"Because appellate counsel is not required to raise every non-frivolous issue on appeal, appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015). Mr. Sharp's direct-appeal counsel did not argue that application of the CRF statute violated the ex post facto clause. Instead, he raised these two issues: (1) that the trial court improperly considered aggravating and mitigating factors at sentencing, and (2) that one of his convictions should be vacated due to double jeopardy. Dkt. 21-3 at 12.

For the first issue, "[s]entencing decisions rest within the sound discretion of the trial court" and will be reversed only if they are "clearly against the logic and effect of the facts and circumstances before the court." *Sharp v. State*, 951 N.E.2d 282, 288 (Ind. Ct. App. 2011) ("*Sharp I*"). That argument was therefore a weak one to pursue on appeal. *See Sanders v. Cotton*, 398 F.3d 572, 585 (7th Cir. 2005) (argument challenging consecutive sentences was "clearly weaker" than a challenge to jury instructions because "a trial court has wide discretion to impose consecutive sentences").

For the second issue, Mr. Sharp argued that his convictions for both Class A felony and Class C felony child molesting violated double jeopardy. Dkt. 21-3 at 18–20. He contended that the Class C charge "required proof of no more facts than the" Class A charge. *Id.* at 19. However, as the Court of Appeals explained, "Class A felony child molesting requires deviate sexual

12

conduct while Class C felony child molesting requires fondling or touching with intent to arouse sexual desires." *Sharp I*, 951 N.E. 2d at 287 (quoting *Sloan v. State*, 947 N.E.2d 917, 924 (Ind. 2011)).  The Court of Appeals also rejected the double jeopardy argument under the Indiana Constitution's "actual evidence" test because the State established at trial that the Class A felony was based on oral sex while the Class C felony was based on fondling with the intent to arouse or satisfy sexual desires.  *Id.*; *see Sloan*, 947 N.E.2d at 924.  The double jeopardy argument was therefore also weak because it misunderstood the elements of the charges and overlooked the evidence and argument presented at trial.  *See id.*

Both issues presented on direct appeal to the Indiana Court of Appeals were therefore weak.  Indeed, in the petition to transfer the direct appeal to the Indiana Supreme Court, appellate counsel did not reargue either of those issues.  *See* dkt. 6.  He contended only that Mr. Sharp's sentence was inappropriate under Indiana Appellate Rule 7(B), which allows Indiana appellate courts to revise "inappropriate" sentences.[3]  *Id.*  And in this habeas proceeding, the State does not argue that either issue raised on direct appeal was meritorious.  *See* dkt. 21; *cf. Ramirez v. Tegels*, 963 F.3d 604, 616 (7th Cir.

---

[3] Mr. Sharp did not raise a separate Rule 7(B) argument to the Indiana Court of Appeals, but invoked it as an alternate remedy for his sentencing-factor argument. Dkt. 21-3 at 21.  The Indiana Court of Appeals addressed and rejected the Rule 7(B) argument separately.  *Sharp I*, 951 N.E.2d at 289–90.  This argument was also weak because, as the Indiana Supreme Court explained, "the nature of the defendant's criminal conduct warrants serious penal consequences." *Sharp v. State*, 970 N.E.2d 647, 651 (Ind. 2012).

2020) (the ineffective assistance hurdle is "not particularly high" when the State concedes that the claims raised on direct appeal were weak).

Instead, the State argues that the ex post facto claim was also weak because Seventh Circuit precedent shows that there was no violation. Dkt. 21 at 7–8. But those cases involve the Federal Sentencing Guidelines rather than a state statute. *See United States v. Vallone*, 752 F.3d 690, 696 (7th Cir. 2014) ("[W]e will sustain the application of a new, more punitive version of the Guidelines to the defendant's offense conduct so long as that conduct straddled the effective date of the new version."); *United States v. Vivit*, 214 F.3d 908, 917 (7th Cir. 2000). And other precedent supports Mr. Sharp's ex post facto argument. *See Upton v. State*, 904 N.E.2d 700, 705–06 (Ind. Ct. App. 2009) (reversing CRF status after the State conceded that its application was an ex post facto violation); *Griffin v. United States*, 502 U.S. 46, 54–56 (1991) (collecting cases that vacated "general-verdict convictions that may have rested on an unconstitutional ground").

The unraised ex post facto argument is therefore "clearly stronger" than the arguments raised on direct appeal. *Makiel*, 782 F.3d at 898. It was also an "obvious" issue because the sentencing court explicitly addressed the issue at sentencing. *See id.* at 903 (issue was obvious when it was addressed in a proffer at trial); *Sharp III*, 94 N.E.3d at *4.

### b. Prejudice

Prejudice requires "a reasonable chance of success on appeal." *Ramirez*, 963 F.3d at 617. Mr. Sharp is not required to show that he "would have

14

prevailed"; it is enough that the issue "had a better than fighting chance at the time." *Id.* Here, there was no on-point precedent addressing whether it was an ex post facto violation to apply the CRF statute when the jury's verdict did not specify whether it was based on acts that occurred before or after the effective date of the CRF statute.[4] But there was ample precedent supporting a cogent ex post facto argument. The Indiana Court of Appeals had held that the statute could not be constitutionally applied to conduct completed before its effective date. *See Upton*, 904 N.E.2d at 705–06. And the Supreme Court of the United States had vacated general verdicts when it was not possible to determine whether they were based on unconstitutional grounds. *See Griffin*, 502 U.S. at 54–56 (collecting cases).

There was therefore "a reasonable chance" that Indiana's appellate courts would have found an ex post facto violation on direct appeal, if the issue had been raised. *Ramirez*, 963 F.3d at 617. That is enough to show prejudice. *Id.*

### 3. Remedy

"A defendant whose lawyer does not provide him with effective assistance on direct appeal and who is prejudiced by the deprivation is . . . entitled to a new appeal." *Id.* at 613. Because Mr. Sharp has satisfied the *Strickland* test for ineffective assistance of appellate counsel, the State—within ninety days—

---

[4] "It is well settled that the ex post facto clause is not applicable to offenses which began before the effective date of a statute and continue thereafter." *United States v. Couch*, 28 F.3d 711. 715 (7th Cir. 1994). Mr. Sharp's argument, however, is not that his crimes straddled the CRF statute's effective date, but that the date of the offenses is uncertain. *See* dkt. 22 at 1–2 ("[T]here is nothing upon which the sentencing court could rely in order to determine the specific dates of the offense.").

15

must grant him a new appeal in which he may raise his ex post facto claim or remove his CRF status.  *See id.* at 618–19.

## IV.
## Conclusion

For the reasons explained above, Mr. Sharp's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **GRANTED** on his ineffective assistance of appellate counsel claim and otherwise **DENIED**.  Within ninety days, the State must grant him a new appeal in which he may raise his ex post facto claim or remove his CRF status.

**SO ORDERED.**

Date: 5/4/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov

Terry Wayne Tolliver
BRATTAIN MINNIX GARCIA
Terry@BMGIndy.com